UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE CHACON | CASE NO. 8:19-cv-00564-JLS-DFM |
| v. | **ORDER (1) GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. 55) AND (2) DENYING DEFENDANT'S MOTION TO STRIKE (Doc. 60)** |
| EXPRESS FASHION OPERATIONS LLC ET AL. | |

Before the Court is a Motion for Class Certification filed by Plaintiff Jorge Chacon. (Mot., Doc. 55; Mem., 55-1.)  Defendant opposed and Plaintiff responded.  (Opp., Doc. 56; Reply, Doc. 59.)  Defendant then filed a Motion to Strike Plaintiff's Reply (MTS, Doc. 60) and an *ex parte* application to advance the hearing date on the motion to strike.  The Court granted the request to advance the hearing date on the motion to strike and considered Plaintiff's opposition to the *ex parte* application to be the opposition to Defendant's motion.  (Order, Doc. 64; Opp. to MTS, Doc. 63.)

Having considered the parties' briefs and held oral argument, the Court now (1) GRANTS Plaintiff's Motion for Class Certification and (2) DENIES Defendant's Motion to Strike for the reasons stated below.

## I.    BACKGROUND

### A.  **The Parties**

Defendant Express Fashion Operations LLC ("Express") is an Ohio corporation that operates more than 600 retail apparel stores in the United States and Puerto Rico, including approximately 142 stores in California during the relevant time period.  (Colpoys Decl. ¶ 2, Doc. 56-1.)  Express has employed more than 13,000 non-exempt, hourly employees in California since January 29, 2015; of these employees, more than 9,800 signed a Dispute Resolution Agreement ("DRA"), which includes a class action waiver.  (*Id*. ¶ 17.)  Express also employs Sales Leadership Team ("SLT") employees in leadership roles including store manager, co-manager, sales leader, key holder, associate manager, and assistant manager.  (*Id*. ¶ 2.)  Plaintiff Jorge Chacon was employed by Express from 2003 to 2004. (*Id*. ¶ 5.)  Chacon returned to Express in April 2008 through May 2016 as a co-manager in Express's Main Place store.  (*Id*.; Chacon Decl. ¶ 2, Doc. 55-5.)  As a co-manager, Chacon was an SLT member.  (Colpoys Decl. ¶ 5.)

Express applies the same set of meal and rest period policies, timekeeping policies, and regular rate calculations to all its non-exempt employees in California.  (Colpoys Depo. 7:6–19, 22:14–23:8, Pike Decl. Ex. B, Doc. 55-3 at 10.)  From the beginning of the

2

class period through 2016, Express used a timekeeping system called "Work Brain." (Mem. at 3; Freeman Depo 14:24–15:11, Pike Decl. Ex. C, Doc. 55-3 at 38.)  Beginning in April 2016, Express began a nationwide tiered rollout of a new timekeeping system called "Kronos."  (Freeman Depo at 14:12–22.)  All stores nationwide were using Kronos by the end of 2016.  (*Id.*)  Throughout the entire class period, Express used the PeopleSoft system to generate payroll, which Express itself operates.  (*Id.* at 67:16–68:7.)

### B. Express's Labor Policies and Practices

#### 1. Express's On-Duty Meal Period Policy

During an employee's new-hire onboarding, Express requires its SLT employees to sign an On-Duty Meal Period Form to allow them to take on-duty meal periods "in emergency circumstances."  (Mem. at 9; On-Duty Meal Period Agreement ("Agreement"), Pike Decl. Ex. F, Doc. 55-3 at 213.)  The Agreement states, "The Associate and Express agree that the nature of the Associate's work may, on occasion, prevent the Associate from being relieved of all duties during the Associate's meal period."  (Agreement, Doc. 55-3 at 213.)  The Agreement further states that an SLT employee may "take an on-duty meal period in emergency circumstances such as if an Associate calls off and there is no one to cover their shift."  (*Id.*)  All SLT members "must complete and receive a copy of the 'Agreement for On-Duty Meal Period' document."  (*Id.*) (emphasis added).  The SLT member is ultimately responsible for determining whether the nature of the work warrants an on-duty meal.  (Opp. at 16.)

#### 2. Meal and Rest Break Waiver Policies

Express's Standard Operating Procedures ("SOP") for Labor Scheduling provides that, "in the event a meal break is not taken when scheduled," an "electronic waiver will be generated" when the associate clocks out for the day.  (April 2019 SOP, Pike Decl. Ex. E, Doc. 55-3 at 194; June 2016 SOP, Pike Decl. Ex. D, Doc. 55-3 at 145; Jan. 2015 SOP, Pike Decl. Ex. H, Doc. 55-3 at 276.)  "In the event a meal break is not taken at the appropriate time, a waiver *must* be completed to document the event."  (*Id.*) (emphasis

added).  Until 2020, the electronic waiver did not provide the option to report a missed or late meal period.  Rather, from 2015 to 2016, an employee who received a timekeeping alert when she clocked out was presented with the following three choices: (1) "I waived this break," (2) "I took this break but forgot to clock out," or (3) "I took this break at a different time."  (Jan. 2015 SOP, Doc. 55-3 at 276.)  In June 2016, Express removed the third option, leaving two choices for employees—they either waived the break or took the meal but forgot to clock out.  (June 2016 SOP, Doc. 55-3 at 145; April 2019 SOP, Doc. 55-3 at 194.)  Express also added the following prompt that would appear after the employee selected one of the two choices: "By clocking out, you agree that if you feel you were not permitted the opportunity to take a meal break, you will call the Ethics Hotline[.]" (*Id.*)

Express had a similar waiver policy in place for rest breaks.  From 2015 to 2016, "employees were provided the same options as with the meal breaks: they waived the break, they took it and forgot to clock out, or they took it at a different time." (Mem. at 17; Jan. 2015 SOP.)  These options appeared only if an employee did not clock out for a rest break when scheduled.  (*Id.*)  Beginning in June 2016, if an employee was clocked in for 3.5 hours or more, "the following rest break question will populate and must be answered before clocking out": "I agree that if I feel I was not permitted the opportunity to take all my rest breaks to which I was entitled, I will call the Ethics Hotline. . . to report the instance immediately." (June 2016 SOP; April 2019 SOP.)[1]

## C. **Meal and Rest Break Premium Policy**

Until 2020, the only time a meal period premium was ever paid to employees was if they reported a missed or late meal through the waiver alert described above.  (Mem. at 6; Freeman Depo. 35:6–25.)  As described, however, the alert did not provide an option for

---

[1] The current version of Express's SOP contains a "California Addendum" with the text of the current waiver prompt, which now contains the following options: (1) I confirm, I took my 30-minute uninterrupted meal break; (2) I was not permitted to take my 30-minute uninterrupted meal
   (footnote continued)

employees to select to report a missed or late meal; rather, the only way for an employee to report missed meals was by calling the Ethics Hotline, information that Express added to the waiver beginning in 2016. (Colpoys Depo. 74:5–13; Jan. 2015 SOP; June 2016 SOP; April 2019 SOP.)

A similar policy applied to rest breaks, which employees clocked out for from 2015 to 2016 and again from 2017 to the present. (Mem. at 6; Freeman Depo. 46:5-55-18; 60:4-61:9; 82:4-15.) Plaintiffs argue that, "[a]lthough employees clocked out for rest breaks during the majority of the Class Period, Express did not flag missed, late, or short rest breaks." (Mem. at 7; Freeman Depo. 15:12-23; 46:5-55-18; 60:4-61:9.) It was not until 2020 that Express began automatically applying a rest break premium if an employee did not punch out for a rest break. (Mem. at 7.)

## D. **The Concurrent State Action**

On January 31, 2017, Plaintiff filed a lawsuit against Express and two individual defendants—Plaintiff's former managers at Express—in Orange County Superior Court, alleging fifteen individual claims: (1) failure to provide and maintain accurate wage statements; (2) failure to provide meal breaks; (3) failure to provide uninterrupted rest periods; (4) failure to pay minimum wage; (5) failure to pay overtime; (6) failure to pay timely wages; (7) failure to pay for necessary expenses; (8) disability discrimination; (9) retaliation; (10) failure to prevent discrimination; (11) failure to accommodate; (12) failure to engage in the interactive process; (13) harassment; (14) wrongful termination; and (15) unlawful business practices under California's Unfair Competition Law. ("State Court

---

break; or (3) I chose to waive my meal break. (Colpoys Decl. Ex. 11, Doc. 56-1 at 192.) The current version of the rest break waiver is similar: (1) I was authorized and permitted to take my 15-minute rest period; (2) I was not authorized or permitted to take my 15-minute rest period; or (3) I chose to waive my 15-minute rest period. (*Id.*)

Action," Ross Decl. ¶ 2, Ex. 1, Doc. 57.)  Plaintiff also sought PAGA penalties based on nine alleged Labor Code violations.  (*Id.*)

On April 8, 2021, Plaintiff dismissed his individual claims for failure to provide accurate wage statements, meal and rest breaks, minimum wage, overtime, and timely wages.  (Supp. Pike Decl. Ex L, Doc. 59-1 (dismissing causes of action nos. 1, 4, 6, 8, 10, and 12 in the original complaint).)  During the hearing held on this matter, Plaintiff's counsel represented to the Court that the remaining wage-and-hour claim, for recovery of unreimbursed business expenses under Labor Code Section 2802 (claim 15 in the original complaint), should also have been dismissed but was not due to a miscommunication with counsel in that case.  Plaintiff's counsel further represented that the business expense claim would be also be dismissed.

Plaintiff continues to separately pursue his individual claims for discrimination and retaliation against Express and one of the individual defendants,[2] as well as his PAGA claims.

### E.  **The Instant Action**

On January 29, 2019, Plaintiff filed the instant putative class action in Orange County Superior Court, which Defendant removed to this Court under the Class Action Fairness Act ("CAFA").  (Notice of Removal, Doc. 1.)  In his amended complaint, Plaintiff asserts ten claims against Express on behalf of himself and the putative class members: (1) failure to pay overtime; (2) failure to pay timely wages upon termination; (3) unlawful business practices under California's Unfair Competition Law; (4) failure to pay minimum wage; (5) failure to provide and maintain accurate wage statements; (6) failure to provide meal breaks; (7) failure to provide uninterrupted rest periods; (8) failure to pay for necessary expenses; (9) unlawful discount and deductions of entitled wages; and (10) compelling patronizations. (First Amended Complaint ("FAC") ¶¶ 47-115, Doc. 37.)

---

[2] At the hearing, counsel also clarified that Plaintiff had dismissed one of the individual defendants (but continues to pursue claims against the other one.)

Plaintiff now seeks to certify the following class: All individuals employed by Defendant in California as non-exempt, hourly paid employees who worked at any time from January 29, 2015 through the date of class certification ("Class Period"), and who did not execute a Dispute Resolution Agreement,[3] and the following subclasses:

- **On Duty Meal Break Subclass:** All Class Members who worked as a store manager, co-manager, full-time sales leader, part time sales leader, key holder, associate manager, and assistant manager and worked at least one on-duty meal period;

- **Meal Break Waiver Subclass:** All Class Members who worked at least one shift of five to six hours;

- **Meal Break Premium Subclass:** All Class Members who worked at least one shift of more than six hours;

- **Rest Break Premium Subclass:** All Class Members who worked at least one shift of more than 3.5 hours during the Class Period (excluding the time between April 30, 2016 through January 1, 2017);

- **Regular Rate Subclass:** All Class Members who earned a non-discretionary bonus or incentive payment covering the same work period during which the employee received overtime wages, meal period premiums, or rest period premiums from January 31, 2015 to December 31, 2018;

- **Waiting Time Subclass:** All Class Members who worked at least one shift of more than 3.5 hours from January 31, 2016 to the date of class certification; and

---

[3] Plaintiff concedes that, having not signed the DRA himself, Plaintiff lacks standing to address the issue of enforceability on behalf of class members who signed a DRA. (Reply at 2, citing *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015).) Plaintiff requests that the Court redefine the Class to exclude employees who signed a DRA. (*Id.*) The Court therefore evaluates Plaintiff's motion based on the revised class definition that excludes employees who signed a DRA.

- **Derivative Claims Subclass:** Plaintiff's Complaint also includes claims pursuant to Labor Code sections 204, 226, 510, 1174(d), 1194, 1197, 1197.1, 1198, and Business & Professions Code section 17200, *et seq.*

(Mot. at 1–2; Reply at 2.)

Plaintiff also requests that the Court (1) appoint Plaintiff Jorge Chacon as representative for the proposed Class and Subclasses and (2) appoint Capstone Law APC and Jackson Law, APC as Class Counsel for the proposed Class and Subclasses. (Mot. at 2.)

## II.    LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district

court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id*. at 350–51.

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id*. at 345.  Here, Plaintiff seeks certification of the class under Rule 23(b)(3), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### III.    **DISCUSSION**

#### A. **Commonality and Predominance**

The Court begins with an analysis of the Rule 23(a)(2) commonality requirement and the Rule 23(b)(3) predominance requirement, both of which often involve overlapping considerations. *See, e.g.*, *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012), *aff'd*, 789 F. App'x 9 (9th Cir. 2019)).

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.*  In other words, the "determination of [the common contention's] truth or falsity [must] resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

The predominance requirement under Rule 23(b)(3) "is far more demanding" than the commonality requirement of Rule 23(a). *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d

919, 981 (C.D. Cal. 2015) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).  The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

The Court will address commonality and predominance as to each of the proposed Subclasses in turn.

### 1.  On-Duty Meal Break Subclass

Plaintiff argues that common questions of fact or law predominate the claims of the On-Duty Meal Break Subclass.  Specifically, Plaintiff's theory of liability hinges on the assertion that Express unjustifiably used on-duty meal periods for its SLT employees.

Under California law, an "employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."  Cal. Lab. Code § 512(a).  "[T]he statute requires a first meal period no later than the start of an employee's sixth hour of work." *Brinker Rest. Corp. v. Superior Ct*., 53 Cal. 4th 1004, 1041 (2012).  If an employee is not relieved of all duty during a 30-minute meal period, the meal period is considered an "on duty" meal period

and counted as time worked.  Cal. Code Regs. tit. 8, § 11040, sbd. (11)(A).[4]  An "on duty" meal period "shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to."  *Id.*  "The nature of the work exception is an affirmative defense, and thus the burden is on the employer to plead and prove facts justifying on-duty meal periods."  *Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926, 943, 210 Cal. Rptr. 3d 215, 227 (2016).

Plaintiff has sufficiently demonstrated commonality as to the On-Duty Meal Break Subclass.  As noted above, all SLT members sign an On-Duty Meal Period Form as part of their new-hire on-boarding process.  (Mem. at 9; June 2016 SOP, Doc. 55-3 at 145; April 2019 SOP, Doc. 55-3 at 194; Agreement, Doc. 55-3 at 213.)  Plaintiff argues that these agreements are unlawful because the nature of retail work does not necessitate on-duty meal periods, and—even if it did—the employer, not the employee, is responsible for determining whether the nature of the work at each site permitted on-duty meal periods. (Mem. at 10–11; Reply at 7–9.)  Because Express requires all SLT members to sign the On-Duty Meal Period Agreement, Plaintiff argues that the legality of Defendant's policies of requiring employees to sign the Agreement and to determine whether "the nature of the work" necessitates them are "common question[s], the resolution of which will apply to all members of the On-Duty Meal Period Subclass."  (Mem. at 11; Reply at 9.)

Express does not dispute that it has a policy of requiring all SLT employees to sign the Agreement; rather, it argues that the Agreement is "voluntary and revocable" and thus "facially lawful."  (Opp. at 15.)  First, Defendant's argument that the Agreement is "voluntary" is directly contradicted by the Agreement itself, which states that the employee "must" complete the Agreement.  (Agreement, Doc. 55-3 at 213.)  More importantly, however, at the class certification stage, the Court must determine whether the

---

[4] "The IWC's wage orders are to be accorded the same dignity as statutes."  *Brinker*, 53 Cal. 4th at 1027.

claim presents a common question with common answers, not the likelihood of the claim's success on the merits.  *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (holding that the "district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims").  Express's arguments about the merits of Plaintiff's claim are therefore insufficient to defeat certification.  *See Brinker*, 53 Cal. 4th at 1033 ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.")

　　　　Defendant further argues that individual issues would predominate any common questions because "resolution of each individual claim within the On-Duty Meal Period Subclass will depend on specific evaluation of Express's 'nature of the work' defense in instances where an SLT member actually invoked the Agreement."  (Opp. at 16.)  Express, however, "has treated the nature of the work exception on a classwide basis" by requiring *all* SLT members to sign the Agreement, undercutting its argument that resolution of the policy's lawfulness would require individual inquiries.  *Lubin*, 5 Cal. App. 5th at 949 (finding that individual issues did not predominate a meal period claim where the defendant "had all security officers sign an on-duty meal agreement during orientation, regardless of each security officer's job site or duties").  Further, Express's argument assumes that on-duty meal breaks may sometimes be justified in the retail setting, but Plaintiff argues that "retail work, including covering for employees who fail to report to work," *never* justifies the nature of the work exception.  (Reply at 8.)  Plaintiff also argues that, even if the exception might sometimes apply, Defendant improperly discharged its duty to analyze whether the nature of the work exception permitted on-duty meal periods by requiring SLT employees to make that determination instead.  (*Id.*, citing *Lubin*, 5 Cal. App. 5th at 948 ("[S]ince the employer did not analyze whether the nature of the work

exception applies before requiring employees to take on-duty meal periods, it cannot rely on the nature of the work defense to bar class certification.").)

Where, as here, "there are no relevant distinctions between the worksites . . . the 'nature of the work' inquiry would be a common one . . . rather than a site-by-site inquiry." *Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 964 (9th Cir. 2013) (internal quotations omitted.)  The Court therefore concludes that common issues predominate the On-Duty Meal Period Subclass.

### 2.  **Meal Break Waiver Subclass**

Plaintiffs' theory of liability for the Meal Break Waiver Subclass is that Express obtained facially invalid waivers from Class Members who worked shifts between five and six hours without a meal period.

Under California law, "[w]hen someone is suffered or permitted to work—i.e., employed—for five hours, an employer is put to a choice: it must (1) afford an off-duty meal period; (2) consent to a mutually agreed-upon waiver if one hour or less will end the shift; or (3) obtain written agreement to an on-duty meal period if circumstances permit. Failure to do one of these will render the employer liable for premium pay." *Brinker*, 53 Cal. 4th at 1039.  Further, according to the Division of Labor Standards Enforcement (DLSE),[5] "blanket waivers" of meal periods are invalid:

> As a statutorily protected right, the decision to forego a meal period must be made personally by each worker on a daily basis. The decision to forego a meal period may not, therefore, be based on a specific requirement of the employer or on a policy or practice which could reasonably be perceived to be a condition of employment. Therefore, blanket "waivers" of meal periods

---

[5]  "The DLSE is the state agency empowered to enforce California's labor laws, including IWC wage orders.  The DLSE's opinion letters, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Brinker*, 53 Cal. 4th at 1029 n.11 (internal citations and quotations omitted).

> or "group" agreements to forego or forestall meal periods until later in the work day, whether written or oral, will not be considered valid.

(Request for Judicial Notice ("RJN"), Ex. 1 (DLSE Opinion Letter, Aug. 13, 2003), Doc. 55-8.)[6]

     Plaintiff asserts that invalid "blanket waivers" are "precisely what Express requires of its employees." (Mem. at 12.) Specifically, as discussed above, if a required meal period is not recorded during an employee's shift, a mandatory electronic waiver is generated in the system when the employee clocks out for the day. (April 2019 SOP; June 2016 SOP; Jan. 2015 SOP.) The electronic waiver does not provide the option to report a missed or late meal period; rather, employees select from choices including (1) "I waived this break," (2) "I took this break but forgot to clock out," or (3) "I took this break at a different time," depending on the time period. (*Id*.) In June 2016, Express also added the following prompt that would appear after the employee selected one of the two choices: "By clocking out, you agree that if you feel you were not permitted the opportunity to take a meal break, you will call the Ethics Hotline[.]" (June 2016 SOP; April 2019 SOP.) In plain terms, Plaintiffs allege a company-wide system that created a smooth path to waive a meal period and an obstacle course to obtain premium pay.

     The common question of the meal break waiver's facial validity is capable of resolution on a class-wide basis. Defendant argues that individual issues will predominate because the theory would require "investigating each occurrence of an employee utilizing the waiver" to determine if a Labor Code violation occurred. (Opp. at 16.) Defendant, however, misconstrues Plaintiff's theory of liability, which is that the meal break waivers are *facially unlawful*; deciding this question would not require individual inquiries into the particular circumstances under which each employee executed the waiver. *See Saechao v.*

---

[6] The Court takes judicial notice of the DLSE opinion letter, dated August 13, 2003, concerning "Meal Periods Under IWC Order No. 14-2001." *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 959 (9th Cir. 2013) (taking judicial notice of several DLSE Opinion Letters); *see also* Fed. R. Evid. 201(b) (allowing courts to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

*Landry's Inc*, No. C 15-00815 WHA, 2016 WL 1029479, at *4 (N.D. Cal. Mar. 15, 2016).
Here, the subclass "consists of employees who signed a waiver and for whom Defendant
declined to pay premium wages for shifts without full meal breaks." (Reply at 11.)
Defendant's reason for not paying premium wages is presumably because these employees
executed a waiver of their meal break. "If [Defendant] contends that some of the missed
meal breaks were in fact waived on a shift-by-shift-basis, its failure to record such breaks
due to its reliance on the challenged policy is its own fault." *Saechao*, 2016 WL 1029479,
at *4.

The Court therefore concludes that common issues predominate the Meal Break
Waiver Subclass.

### 3. **Meal Break Premium Subclass**

Plaintiffs' theory of recovery for the Meal Break Premium Subclass is that Express
failed to pay meal break premiums for meals taken after the fifth hour of work, or for
meals that were missed entirely. (Mem. at 14–17.) Under California law, if an employer
fails to provide an employee a compliant meal break, that "employee is 'immediately'
entitled to the premium wage, without any demand or claim to the employer, in a manner
'akin to an employee's immediate entitlement to payment of wages or for overtime."
*Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1154 (2015) (citing *Murphy v.
Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1108 (2007)).

As described above, Plaintiff argues that Express's timekeeping system improperly
"put[s] the onus on the employee to call the 'Ethics Hotline' if they were not provided a
compliant meal break." (Mem. at 15.) Further, Plaintiff argues that timekeeping records
demonstrate that Express failed to pay meal break premiums. In the sample of records
produced, under the column "Meal Periods Paid," there "were only 12 instances in 14,000
pages of documents showing any premium payments." (*Id.*; Pike Decl. ¶ 3.) Meanwhile,
in the first 1,000 of the 154,498 lines of data Express produced in this action, there are 328

15

shifts over five hours recorded, and 101 meal breaks that were either less than thirty minutes, taken after the fifth hour of work, or missed completely.  (Pike Decl. ¶ 4.)

Defendant does not refute that employees are required to report missed meal periods to the Ethics Hotline, and that there was no system in place during the class period to automatically record and pay premium penalties.  (Opp. at 16–17.)  Plaintiff argues that this policy of requiring employees to submit a premium request is unlawful; "the right to a premium payment, just like the right to overtime pay, is immediate—an employer cannot make such payment contingent upon submission of a premium request."  (Reply at 11.) Plaintiff's theory thus turns on the legality of this "premium request requirement," which is a common inquiry suitable for class treatment.

Defendant argues that Plaintiffs' theory would require individualized inquiries, without which "the presence or absence of a meal period pay code in the records is not classwide proof of anything."  (Opp. at 19.)  Defendant further argues that "[e]ach and every instance where an employee did not take a meal during a voluntarily 'waivable' meal period would still need to be individually investigated to determine *why* the employee did not take the meal[.]"  (*Id.*) (emphasis added.)  Plaintiff, however, has produced evidence of Express's timekeeping records demonstrating that Express failed to pay premiums for meals taken after the fifth hour of work, or for missed meals.  (Pike Decl. ¶¶ 3–4; Pike Decl. Ex. C.)  "If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided."  *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 74, 481 P.3d 661, 672 (2021) (citing *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring)).  Further, "[a]n employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief.  Rather, . . . the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it."  *Id.* (quoting *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring)).

The Court therefore concludes that common issues predominate the Meal Break Premium Subclass.

### 4. **Rest Break Premium Subclass**

Similar to his meal break premium theory, Plaintiff's theory of recovery for the Rest Break Premium Subclass is that "Express failed to pay rest break premiums because Express's policy put the burden on employees to report missed rest breaks, even when it required employees to clock out for rest breaks." (Mem. at 18.) Plaintiff asserts that, beginning in 2016, "Express started requiring each employee to agree that they had received all rest breaks if they did not call the Ethics Hotline, despite the fact that they could have easily checked against the time punch records as employees clocked out for rest breaks for the majority of the Class Period." (*Id.*; June 2016 SOP; Colpoys Depo. 82:1-10; Freeman Depo. 60:4-61:9.) Moreover, Plaintiff argues that "Express clearly had the capability to monitor when compliant rest breaks were or were not recorded as, at least for a time, the employee only received an alert if the rest break was not recorded at the scheduled time." (June 2016 SOP.)

Plaintiff further asserts that evidence demonstrates that "Express has a uniform practice of never paying rest break premiums to Rest Break Subclass Members." (Mem. at 18.) Specifically, Express's code for a rest break penalty ("CAB") does not appear once in the sample of records produced. (Pike Decl. ¶ 3; Pike Decl. Ex. I.) Plaintiff argues that "[g]iven Express's size and scale, it is extraordinarily unlikely that it maintained a perfect record providing rest breaks"; rather, the more likely explanation is a "deep, system-wide error" in Express's timekeeping system that fails to record missed or late rest breaks, flagging them only to employees and prompting them to indicate that they either took or waived their rest periods. (Mem. at 18–19, citing *Safeway,* 238 Cal. App. 4th at 1153.)

Defendant again challenges certification by focusing on the merits of Plaintiff's claim, arguing that "the Labor Code does not require employers to utilize timekeeping systems in a certain way—it only requires employers to make breaks available, and pay

premiums where they are not made available." (Opp. at 20.) Defendant further argues that any deviation from their lawful policy "occurred on an individual basis and cannot be addressed on behalf of the proposed class." (*Id.*) As with Plaintiff's meal break premium subclass, however, Plaintiff's rest-break premium subclass challenges Defendant's policy of shifting the burden to employees to request a premium. The legality of this policy is "plainly capable of class-wide resolution." *Saechao*, 2016 WL 1029479, at *6.

The Court therefore concludes that common questions predominate the Rest Break Premium Subclass.

### 5. **Regular Rate Subclass**

"Plaintiff's regular rate theory challenges Express's undisputed uniform practice of failing to incorporate non-discretionary sales bonuses and incentive payments into employees' regular rate of pay." (Mem. at 19.) Specifically, managerial employees were eligible to receive sales bonuses and incentive payments during the Class Period. (Freeman Depo. at 83:5–84:5, Doc. 55-3 at 95–97.) At times, these bonuses were paid during the same periods in which Plaintiff and Regular Rate Class Members worked overtime hours. (Mem. at 19, citing Pike Decl. Ex. K.) Plaintiff argues that, during those workweeks, Express was required to calculate overtime pay at 1.5 times the regular rate of pay, and "the regular rate must incorporate the bonuses as they are a part of the total compensation earned, divided by regular hours worked." (Mem. at 19, citing *Alvarado v. Dart Container Corp. of Cal.*, 4 Cal. 5th 542, 563-64, 565-69 (2018).)

Under California law, if an employer fails to provide a meal or rest period, the employer is required to pay meal and rest break premiums equal to "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). The "regular rate" is not necessarily the same as an employee's hourly rate; it includes "all 'remuneration for employment[.]'" *Advanced-Tech Sec. Servs., Inc. v. Superior Ct.*, 163 Cal. App. 4th 700, 707 (2008) (adopting the Fair Labor Standards Act definition of "regular rate"). Plaintiff

therefore argues, and Defendant does not dispute, that the regular rate of pay must include non-discretionary bonuses and commissions. (Mem. at 20; Opp. at 22.)

Defendant responds that Plaintiff has failed to "offer any evidence showing Express actually failed to compensate any employee, including Plaintiff, due to a regular rate calculation error, and what the rate should have been." (Opp. at 22, *Lampe v. Queen of the Valley Med. Ctr.*, 19 Cal. App. 5th 832, 843–44 (2018).) Plaintiff, however, has produced the testimony of Marie Freeman, a payroll consultant at Express, stating that, although Express now includes "the sales bonus in recalculating overtime for the quarter," there was a time period—from 2015 to the end of 2018—when "the system was not doing that calculation[.]" (Freeman Depo. 101:4–102:14.) Further, the evidence shows that Plaintiff earned a sales bonus on November 27, 2015, which was paid based in Defendant's third quarter (August 2, 2015 to October 31, 2015.) (Reply at 14; Pike Decl. Ex. J; Freeman Depo. 83:5–84:5.) The record also shows that Plaintiff worked 2.35 hours during the pay period from October 11, 2015 to October 24, 2015, and 55.94 overtime hours and 0.12 double time hours during the relevant quarter. (Reply at 14 n.8; Pike Decl. Ex. J; Supp. Pike Decl. ¶ 3, Doc. 59-1.) Because Defendant's corporate representative admits that overtime rates were not recalculated to incorporate the bonus during this time, "the only evidence in the record establishes that Plaintiff is typical of the class." (Reply at 14; *see also* Supp. Pike Decl. ¶ 3, Ex. M (calculating that Plaintiff was "underpaid $72.62 as a result of the bonus not being incorporated into the regular rate of pay for this quarter").) Plaintiff further offers evidence of two other employees who were allegedly underpaid because Express failed to recalculate the regular rate of pay, arguing that "it is clear that this was a common occurrence in the class." (Reply at 14; Pike Decl. Ex. J; Supp. Pike Decl. Ex. N.)[7]

---

[7] Defendant moves to strike the exhibits to the supplemental Pike declaration submitted in support of Plaintiff's reply, arguing that it is improper for Plaintiff to rely on new evidence in his reply that was not included in its moving papers. (MTS at 2.) "Evidence submitted in direct response to
    (footnote continued)

Unlike in *Lampe*, where the appellants made only a "vague assertion that the regular rate was miscalculated" and "the trial court could not properly determine if individual or common issues predominate," *Lampe*, 19 Cal. App. 5th 832 at 844, here Plaintiff has provided evidence supporting its contention that Express had a uniform practice of paying overtime at incorrect rates. Whether this practice violates California law is a predominant common question amenable to class treatment.

### 6. Waiting Time Subclass

California Labor Code Section 203 prescribes waiting-time penalties if an employee is not paid all wages owed at the time of termination. Cal. Lab. Code § 203. Because this claim is derivative of Plaintiff's claims for unpaid rest and meal period premiums, and the Court found that common issues predominate the proposed subclasses related to those claims, the Court also finds that common questions predominate the Waiting Time Subclass. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

Defendant makes the additional argument that "the Court cannot certify the proposed Waiting Time Subclass because Express has a good faith defense that it did not engage in any willful violations of the Labor Code." (Opp. at 23.) The question of whether any good faith defense applies, however, is best addressed on a class-wide basis. *See Burnham v. Ruan Transportation*, No. SACV 12-0688-AG-ANx, 2015 WL 12646485, at *8 (C.D. Cal. Feb. 6, 2015).[8]

### 7. Derivative Claims Subclass

Plaintiff's complaint includes additional claims pursuant to Labor Code sections 204, 226, 510, 1174(d), 1194, 1197, 1197.1, 1198, and Business & Professions Code

---

evidence raised in the opposition, however, is not 'new.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 560 n.87 (C.D. Cal. 2014). Here, Plaintiff submitted this additional evidence in direct response to Defendant's contention that Plaintiff failed to offer *any* evidence in support of his regular rate claim. Defendant's motion to strike Exhibit M–O is therefore DENIED.

[8] At oral argument, Defendant argued that the recent ruling in *Salazar v. See's Candy Shops Incorporated, et al*., 64 Cal. App. 5th 85, 278 Cal. Rptr. 3d 450, 453 (2021) further supports the denial of class certification. (*See also* Notice of Supp. Auth., Doc. 65.) The Court disagrees. In
    (footnote continued)

section 17200, *et seq*.  Plaintiff argues that "[t]hese claims are entirely derivative of the claims for the violations alleged by each of the proposed subclasses."  (Mem. at 21.)  Because the Court found that common issues predominate the other proposed subclasses, the Court likewise "finds that common questions predominate with respect to these [derivative] subclasses."  *Dilts*, 267 F.R.D. at 640.  As Defendant points out, however, and Plaintiff does not refute, these claims may only be certified to the extent they derive from the meal period, rest break, regular rate, and/or waiting time subclasses discussed above.

For the reasons set forth above, the Court concludes that Plaintiff has satisfied the commonality and predominance requirements for each of the proposed subclasses.

### B.  **Superiority**

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Id.*  Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy.").  Further, litigation costs would likely "dwarf potential recovery" if each class member litigated individually.  *Hanlon*, 150 F.3d at 1023.  "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."  *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1199 n.2 (9th Cir. 2001) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

---

*Salazar*, the appellate court affirmed the trial court's finding that the evidence did not support a theory of liability based on a uniform policy and, accordingly, individual inquiries would predominate.  *Id*. At 457–58.  For the reasons stated in this Order, this Court concludes that common issues predominate here.

Considering the non-exclusive factors under Rule 23(b)(3)(A)–(D), the Court further finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability of concentrating this matter in one litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D). The Court is also not aware of any litigation concerning the controversy already commenced by or against members of the class.[9] *See* Fed. R. Civ. P. 23(b)(3)(B).

Defendant argues that Plaintiff fails to satisfy the 23(b)(3) superiority standard because (1) Plaintiff's trial plan is deficient and untenable, and (2) litigation is not superior where a significant number of putative class members executed arbitration agreements. (Opp. at 25.) As to the first argument, the Court already concluded that Plaintiff's theories underlying each Subclass are amenable to class action treatment and that common questions would predominate over individual issues. (*See* Section III.A.) As further reinforced by Plaintiff's trial plan, "liability under each of Plaintiff's Subclasses is purely a legal determination." (Trial Plan, Doc.55-7 at 3.) Plaintiff's waiver theories are premised on the argument that Express obtained facially invalid meal and rest break waivers from its employees. (*Id.* at 3–4.) Plaintiff's meal and rest break premium theories assert that, rather than immediately paying meal and rest premiums when they were due, Defendant impermissibly shifted the burden to employees to request a premium. (*Id.* at 4.) Finally, Plaintiff's regular rate theory challenges Defendant's undisputed failure, from 2015 to 2018, to incorporate sales bonuses into its regular rate calculations.

Defendant's second argument is now moot, as the Court has redefined the proposed class to exclude members who have signed arbitration agreements.

The Court therefore finds that the proposed Class and Subclasses meets the superiority requirement under Rule 23(b)(3).

---

[9] As discussed in Section I.D, *supra*, and III.D.3, *infra*, Plaintiff's individual wage-and-hour claims against Defendant in his state court action have been dismissed.

### C. **Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court is persuaded by other district court holdings that "[a]s a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *vacated on other grounds*, 555 F.3d 581 (9th Cir. 2012). Here, there are approximately 3,200 putative class members who did not sign DRAs. (*See* Colpoys Decl. ¶ 17 (explaining that, of the 13,000 non-exempt, hourly California employees employed by Express since January 29, 2015, more than 9,800 signed a DRA).) Accordingly, the Court concludes that the redefined proposed class meets the numerosity requirement.

### D. **Typicality/Adequacy**

As discussed above, Rule 23(a) imposes typicality and adequacy requirements. Specifically, Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[U]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (en banc) (quoting *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998)), *rev'd on other grounds*, 564 U.S. 338 (2011). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

"[T]he typicality and adequacy inquiries tend to significantly overlap." *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015) (citing Newberg on Class Actions § 3:32 (5th ed. 2015)). Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendant argues that Plaintiff is not a typical or adequate class representative because (1) Plaintiff lacks knowledge regarding other stores; (2) as an SLT member, he managed other class members and may have caused the harm he seeks to redress; and (3) Plaintiff's State Court Action precludes Plaintiff and his counsel from adequately representing the class.[10]  (Opp. at 10–13.)  The Court addresses each argument in turn.[11]

### 1. **Plaintiff's knowledge of other stores**

Defendant argues that, because Plaintiff admits "he did not work at every store and does not know the specific working conditions or policies at locations where he did not work," and because Defendant's employee declarations demonstrate that those employees "experienced broad compliance with Express's lawful policies, Plaintiff cannot show his claims are typical of the proposed class.  (Opp. at 10, citing *Garcia v. Sun Pac. Farming Coop.*, 2008 WL 2073979, *13 (E.D. Cal. May 14, 2008).)  In *Garcia*, however, the

---

[10] Defendant also argues that Plaintiff cannot represent associates with DRAs (Opp. at 10), but as discussed above, Plaintiff conceded this point and requested that the Court redefine the proposed Class to exclude employees who signed DRAs.  (Reply at 2.)

[11] For the first time at the hearing, Defendant also raised the argument that Plaintiff cannot certify a class covering the time period after he ended his employment with Express, because after he left, Express shifted to a new timekeeping system, Kronos.  As an initial matter, the Court is not obligated to address arguments raised for the first time at oral argument.  *See Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019).  The Court will nonetheless do so here.  In *Freeman v. Zillow, Inc.*, this Court modified a class period to end on the last day Zillow used the timekeeping system at issue in that action.  No. SACV 14-1843-JLS-DFMx, 2016 WL 6080208, at *5 (C.D. Cal. Feb. 26, 2016).  There, the crux of the plaintiff's theory rested in part on the allegation that Zillow used "a timekeeping system that auto-populated a nine hour workday less one hour for lunch for each employee."  *Id.* at *3.  Zillow had since shifted to a new timekeeping system, so the Court modified the class period to end on the last day that Zillow used the automated timekeeping system.  Here, the shift in timekeeping systems does not meaningfully alter Plaintiff's waiver theories; under *both* timekeeping systems, employees were not given the option to record a missed meal or rest period.  Moreover, these limited choices were designed by Express, not by either system.  While there may be significant differences between Work Brain and Kronos, the Court is unconvinced that the shift resulted in a material change in the challenged policies.

24

plaintiffs "concede[d] that it is not the written policies which are challenged, but the policies in practice in the field." *Garcia*, 2008 WL 2073979, at *10. The plaintiffs thus sought to certify a class of nearly 10,000 agricultural employees on the basis of anecdotal evidence from former agricultural workers; in face of this evidence, the court concluded that the conflicting but "equally compelling" declarations offered by the defendants militated against class certification. *Id.* at *10–11.

Here, in contrast, "Plaintiff's theories rely on practices common throughout the company, not only at the location where Plaintiff worked." (Reply at 3.) Specifically, all of Defendant's locations in California use the same on-duty meal period agreements for SLT employees; the same timekeeping system with the same "waiver" language; the same payroll processing (including the payment of meal and rest break premiums); and the same method of calculating regular rate of pay and overtime rates. (*Id.*; Freeman Depo. at 14:24-15:23; 67:16-68:7; Colpoys Depo., Vol. 2 at 7:6-19; 11:25-12:18; 22:14-23:8; 50:9-51-20). Defendant does not dispute the existence of these uniform policies; that some employees may have nonetheless received compliant meal and rest breaks despite Defendant's policies does not defeat certification. *See Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2012 WL 1110004, at *12 (N.D. Cal. Apr. 2, 2012) ("Defendants cannot disprove the existence of their own acknowledged policy by asserting that isolated employees failed to comply with it."); *Kurihara v. Best Buy Co.*, No. C 06-01884 MHP, 2007 WL 2501698, at *10 (N.D. Cal. Aug. 30, 2007) ("[D]efendant's 'litigation-driven,' selective sampling of employees and other data are insufficient to inject fatal uncertainty into the question of liability.")

Because Plaintiff's theories rely, not on "differences in working experiences or locations, but rather on a uniform common practice in use on a company-wide level" (Reply at 3), the Court concludes that Plaintiff is typical of the class he seeks to represent.

## 2. Plaintiff's role as supervisor

Defendant next argues that Plaintiff's interests conflict with the putative class because he supervised some of the putative class members and was therefore partially responsible for causing the alleged labor code violations.  (Opp. at 12.)  Further, "other managers Plaintiff seeks to represent testified that they enforced Express's meal and rest breaks in their stores," and Plaintiff "is not in a position to represent these employees." (*Id.*)  Again, Defendant misconstrues Plaintiff's theory of the case.  Plaintiff challenges Defendant's company-wide policies of using unjustified on-duty meal breaks and invalid meal break waivers; failing to pay meal and rest break premiums for non-compliant breaks; and improperly calculating the regular rate of pay.  Because Plaintiff's claims "do not focus on the theoretical *implementation* of legally compliant policies" (Reply at 5, emphasis added), there is no conflict of interest.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (declining to adopt a "per se rule concerning adequacy of representation where the class includes employees at different levels of an employment hierarchy," and holding that the inquiry is context-specific); *Moore v. Ulta Salon, Cosms. & Fragrance, Inc*., 311 F.R.D. 590, 606 (C.D. Cal. 2015) (concluding there was no conflict of interest where a uniform corporate policy applicable to all non-exempt employees affected supervisors and their subordinates similarly).

Here, the challenged policies were promulgated at the corporate level and applied to all non-exempt employees, regardless of management level.  The Court therefore concludes there is no conflict of interest among the different supervisory levels of employees.

## 3. Plaintiff's state court action

Finally, Defendant argues that Plaintiff and his counsel are inadequate representatives because Plaintiff is pursuing individual claims in a state court action. (Opp. at 13.)  Defendant relies heavily on *Lou v. Ma Laboratories, Inc*., No. C 12-05409 WHA, 2014 WL 68605, at *1 (N.D. Cal. Jan. 8, 2014).  (*Id.*)  In *Ma Labs*, a district court

held that class counsel was inadequate where they represented "different plaintiffs in
different actions proceeding at the same time with the same claims, same counsel, and
same defendants[.]" *Ma Labs*, 2014 WL 68605 at *2. This case, however, is
distinguishable. Here, Plaintiff alleges wage and hour causes of action, or claims
derivative thereof. In the state court action, Plaintiff now alleges only PAGA claims and
individual claims related to employment discrimination and retaliation. Plaintiff's
individual wage-and-hour causes of actions in the state court action have been dismissed.[12]
(Ex. L to Supp. Pike Decl., Doc. 59-1 (dismissing without prejudice individual claims for
failure to provide accurate wage statements, meal and rest breaks, minimum wage,
overtime, and timely wages).)[13] Further, "[n]o settlement agreement was reached or value
exchanged between the parties" in consideration for the dismissal. (*Id.*)

   Though Plaintiff continues to pursue PAGA claims and individual discrimination
and retaliation claims, this does not demonstrate a conflict of interest that would defeat
adequacy. *See Freeman v. Zillow, Inc*., No. SACV 14-1843-JLS-DFMx, 2016 WL
6080208, at *6 (C.D. Cal. Feb. 26, 2016) (concluding that a plaintiff's proposed class
counsel were adequate representatives of a wage-and-hour class action even though
counsel were simultaneously representing other plaintiffs in actions raising discrimination
claims against the same defendant). "Although certain discrete allegations may
tangentially overlap with the issues in [Plaintiff's] class action, the Court concludes that
proposed class counsel is not inadequate under the reasoning of *Ma Labs*." *Id.*; *see also
Williams v. Cent. Transp. Int'l, Inc*., No. 4:13-CV-2009 CEJ, 2014 WL 5823112, at *3
(E.D. Mo. Nov. 7, 2014) (explaining that the principle articulated in *Ma Labs* "is narrowly

---

[12] As stated above, Plaintiff's counsel represented at the hearing that the Section 2802 claim, the
one remaining wage-and-hour claim in the state court action, would also be dismissed.

[13] Defendant also moves to strike this exhibit, arguing that it is improper for Plaintiff to rely on
new evidence in his reply that was not included in its moving papers. (MTS at 2.) Similar to
other evidence Plaintiff submitted with his reply, Plaintiff submitted the notice of dismissal in
direct response to Defendant's contention that Plaintiff's pursuant of individual wage-and-hour
claims precluded him from adequately representing the class. Defendant's motion to strike
Exhibit L is therefore DENIED. *See In re ConAgra Foods*, 302 F.R.D. at 560 n.87.

premised on the goal of 'eliminat[ing] conflicting interests of counsel' in circumstances in which a class or different classes would involve diverse groups with conflicting litigation objectives").

Nor is the Court persuaded that Plaintiff cannot adequately represent the class merely because his state court action names an individual defendant—Plaintiff's former manager at Express—who is also a putative class member. The instant action challenges Express's corporate policies and procedures at a company-wide level, not the individual actions of any specific store managers. Defendant has not explained how Plaintiff's pursuit of discrimination claims against his former manager will in any way compromise the instant class action or otherwise trigger the concerns identified by the court in *Ma Labs*. *See Ma Labs*, 2014 WL 68605 at *2 (explaining that, where counsel sought to represent different actions with the same claims and same defendants, "Defendants have an incentive to settle all claims at once, if it settles at all, thereby creating opportunities for counsel to manipulate the allocation of settlement dollars.")

### 4. Conclusion

The Court concludes that Plaintiff satisfies the typicality requirement, and that Plaintiff and his counsel will fairly and adequately protect the interests of the class.

## IV.    CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Plaintiff's Motion for Class Certification and (2) DENIES Defendant's Motion to Strike. The following Class and Subclasses are certified under Rule 23(a) and 23(b)(3):

1. **Class:** All individuals employed by Defendant in California as non-exempt, hourly paid employees who worked at any time from January 29, 2015 through the date of class certification ("Class Period"), and who did not execute a Dispute Resolution Agreement, and the following subclasses:

    a. **On Duty Meal Break Subclass:** All Class Members who worked as a store manager, co-manager, full-time sales leader, part time sales

leader, key holder, associate manager, and assistant manager and worked at least one on-duty meal period;

b. **Meal Break Waiver Subclass:** All Class Members who worked at least one shift of five to six hours;

c. **Meal Break Premium Subclass:** All Class Members who worked at least one shift of more than six hours;

d. **Rest Break Premium Subclass:** All Class Members who worked at least one shift of more than 3.5 hours during the Class Period (excluding the time between April 30, 2016 through January 1, 2017);

e. **Regular Rate Subclass:** All Class Members who earned a non-discretionary bonus or incentive payment covering the same work period during which the employee received overtime wages, meal period premiums, or rest period premiums from January 31, 2015 to December 31, 2018;

f. **Waiting Time Subclass:** All Class Members who worked at least one shift of more than 3.5 hours from January 31, 2016 to the date of class certification; and

g. **Derivative Claims Subclass:** Plaintiff's Complaint also includes claims pursuant to Labor Code sections 204, 226, 510, 1174(d), 1194, 1197, 1197.1, 1198, and Business & Professions Code section 17200, *et seq.*

2. Plaintiff Jorge Chacon is appointed as the Class Representative.

3.  Capstone Law APC and Jackson Law, APC is appointed as Class Counsel.

4. The Court directs the parties to meet and confer and to submit an agreed-upon form of class notice that will advise class members of, among other things, the damages sought and their rights to intervene, opt out, submit comments, and contact class counsel.  The parties shall also jointly submit a

plan for the dissemination of the proposed notice.  The parties must work together to generate a class list to be used in disseminating class notice, and they must work together to create a notice that satisfies Rule 23.  The proposed notice and plan of dissemination, as well as a proposed order granting approval, shall be filed with the Court on or before **August 13, 2021.**

DATED:  June 14, 2021

                                       JOSEPHINE L. STATON
_____
                                       HON. JOSEPHINE L. STATON
                                       UNITED STATES DISTRICT JUDGE